| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF GRANT | EIGHTH JUDICIAL DISTRICT |
| | CASE TYPE: Civil Other/Misc. |

Court File No. _____

Erik A. Ahlgren, in his capacity as
assignee in the assignment for the
benefit of creditors of Ashby Farmers
Co-Operative Elevator Company,

                            Plaintiff,                    **SUMMONS**

v.

Jay Link individually and
Link's Wild Safaris

                          Defendants.

---

THIS SUMMONS IS DIRECTED TO **Jay Link and Link's Wild Safaris.**

    **1. YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

    **2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

    Erik A. Ahlgren
    Attorney #191814
    220 West Washington Ave, Suite 105
    Fergus Falls, MN 56537
    Office: 218-998-2775
    *erik@ahlgrenlaw.net*

    **3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

**EXHIBIT A**

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

**Ahlgren Law Office, PLLC**

Dated: January 8, 2019

/s/Erik A. Ahlgren
Erik A. Ahlgren, Attorney #191814
220 West Washington Ave, Ste 105
Fergus Falls, MN 56537
Office: 218-998-2775
Fax: 218-998-6404
*erik@ahlgrenlaw.net*

ATTORNEYS FOR PLAINTIFF

**CLINE JENSEN P.A.**

Dated: January 8, 2019

Dorothy P. Bradley, Attorney # 0180518
125 South Mill Street
Fergus Falls, MN 56537
Office: 218-998-4088
Fax: 218-998-4087
*dbradley@clinelawyers.com*

ATTORNEYS FOR PLAINTIFF

2

| | |
|---|---|
| **STATE OF MINNESOTA**<br>**COUNTY OF GRANT** | **DISTRICT COURT**<br>**EIGHTH JUDICIAL DISTRICT**<br>**CASE TYPE: Civil Other/Misc.** |

Court File No. _____

Erik A. Ahlgren, in his capacity as assignee
in the assignment for the benefit of creditors
of Ashby Farmers Co-Operative Elevator
Company,

Plaintiff,

<b>COMPLAINT</b>

v.

Jay Link individually and
Link's Wild Safaris

Defendants.

---

Erik A. Ahlgren, in his capacity as the assignee in the assignment for the benefit of

creditors of the Ashby Farmers Co-Operative Elevator Company ("Plaintiff" or "Assignee"), as

and for his complaint against Jay Link and Link's Wild Safaris (jointly, "Defendants"), states

and alleges as follows:

<b>PARTIES</b>

      1.     Ashby Farmers Co-Operative Elevator Company (the "Co-Op" or "Assignor") is

a cooperative formed under Minnesota Statute 308A, with its principal place of business at 101

Larson Avenue, Ashby, MN 56309.

      2.     Defendant Jay Link is an individual residing in Wisconsin with an address of P.O.

Box 210, Minong Wisconsin, 54859.

1

3.      Defendant Link's Wild Safari is business which is, on information and belief, is

owned and operated by Jay Link with its office location at 701 Houston Avenue, Minong WI,

54859-9161.

### PROCEDURAL BACKGROUND

4.      On December 21, 2018, the Co-Op executed an assignment for the benefit of his

creditors and the assignment was filed in the Grant County Court pursuant to Minn. Stat.

§577.12.

5.      The Assignee has committed to liquidate and administer all non-exempt assets of

the Co-Op, for the benefit of the Co-Op's creditors, pursuant to the terms of Minn. Stat. §§576

and 577, and under the supervision of the above-captioned court in Case File No. 26-CV-19-3 .

6.      Pursuant to Minn. Stat. §577.18, the Assignee shall be treated as a general

receiver and all proceedings following the filing of the assignment shall be governed by Minn.

Stat. §§576.21 to 576.53.

7.      Pursuant to Minn. Stat. §577.18 and Minn. Stat. §576.29, subd. 1(b)(1) and (2),

the Assignee may pursue any claim or remedy that may be asserted by the Co-Op as well as any

claim or remedy that may be asserted by a creditor of the Co-Op under Minn. Stat. §§ 513.41 to

513.51.

8.      This action is brought under the Minnesota Fraudulent Transfer Act, Minn. Stat.

§§ 513.41 to 513.51, to recover fraudulent transfers, damages and disgorgement, as well as under

Minnesota law to prevent unjust enrichment and to impose a constructive trust, in connection

with transfers of property by the Co-Op to Defendants.

9.      At all times material hereto, there was and is at least one or more creditors who

held and who hold claims against the Co-Op, including but not limited to CoBank  (the

"Predicate Creditors").

10.     The existence of the Predicate Creditors provides the Plaintiff with standing to

assert the claims under the Minnesota Fraudulent Transfer Act, Minn. Stat. §§ 513.41 to 513.51

based on the provisions of Minn. Stat. 576.29, subd. 1 (b)(2).

11.     Defendants are initial transferees of the fraudulent or other avoidable transfers

alleged in this Complaint, or persons for whose benefit such transfers were made, or immediate

transferees of any initial transferee of such transfers.

<h3 align="center">FACTUAL BACKGROUND</h3>

12.     The Ashby, Minnesota grain elevator has been in operation since 1908, and was

originally formed as the Co-Op on June 14, 1937.

13.     The Co-Op purchases grain from local area farmers and aggregates it for shipping

and sale to the grain markets.  Each of the local area farmers is an owner of the Co-Op and builds

equity value based on their use of the Co-Op's services.  As a result of the actions as described in

this complaint, the Co-Op is now defunct.

14.     Jerry Hennessey began as the Co-Op's general manager in 1989.

15.     Beginning by at least June of 2003, Jerry Hennessey began receiving

unauthorized funds from the Co-Op.  The first checks were written directly to him, and were

coded as feed purchases, but Mr. Hennessey never sold feed to the Co-Op.

16.     During the course of his fraud, Jerry Hennessey wrote over $5.4 million in

unauthorized Co-Op checks to pay personal bills for both him and his wife Rebecca Hennessey,

as well as improvements to their home, the purchases of land and other assets in both his name

and that of his wife, and to pay for exotic hunting trips, taxidermy and other expenses that were

unrelated to the business of the Co-Op. The checks were generally coded as purchases of

3

soybeans, wheat, corn, feed or other ordinary expenses of the Co-Op to disguise their true nature.

17.     Beginning in 2015, Jerry Hennessey wrote at least $312,150.00 in Co-Op checks made payable to the order of Jay Link, which paid for exotic hunting trips organized or sponsored by Defendants. The checks that have been identified to date are (the "Unauthorized Checks"):

| | Check # | Date | Amount |
|---|---|---|---|
| Jay Link | 2024566 | 12/29/2017 | $    25,100.00 |
| Jay Link | 2024796 | 12/29/2017 | $    40,800.00 |
| Jay Link | 2024902 | 12/29/2017 | $    73,750.00 |
| Jay Link | 2023744 | 12/30/2016 | $    44,500.00 |
| Jay Link | 2023805 | 12/30/2016 | $    10,000.00 |
| Jay Link | 2023897 | 12/30/2016 | $    50,000.00 |
| Jay Link | 2022470 | 12/31/2015 | $    20,000.00 |
| Jay Link | 2022874 | 10/30/2015 | $    18,500.00 |
| Jay Link | 2025485 | 02/18/2018 | $    24,000.00 |
| Jay Link | 2025518 | 02/18/2018 | $     5,500.00 |
| | | Total | $   312,150.00 |

18.     The Unauthorized Checks clearly identified the Co-Op as the payor.

19.     Based on the name of the Co-Op, the Defendants knew or should have known that they were taking checks from an agricultural cooperative, for expenses unrelated to the business of the cooperative.

20.     The Defendants actively solicited business from residents of the United States, at shows hosted by the Safari Club International in cities located in the United States, through their several  internet sites and through other means.

21.     The Defendants not only purposefully directed their marketing to residents of the United States, but specifically knew or should have known that they were soliciting business from residents of the State of Minnesota, and Grant County, Minnesota in particular.  On information and belief, the Defendants corresponded with Jerry and/or Rebecca Hennessey,

4

obtained travel information from them, assisted in obtaining permits and other required governmental approvals for them, all of which allowed Defendants to understand that they were soliciting business from residents of the State of Minnesota. Perhaps most importantly, Defendants accepted funds drawn from the Co-Op's bank account based on checks that clearly identified the Co-Op as being located in Ashby, Minnesota.

22.     The Defendants knew or should have known that they were benefiting from fraudulent activity or, at a minimum, Defendants failed to exercise reasonable due diligence in accepting the Unauthorized Checks.

23.     Even though the Co-Op owed no money and had no contractual relationship with the Defendants, the Defendants accepted the Unauthorized Checks and procured the Co-Op's funds through use of the Unauthorized Checks.

24.     Jerry Hennessey fraudulently and intentionally concealed the ongoing fraud based on the use of the Unauthorized Checks in an effort to hinder, delay and defraud governmental authorities, the Co-Op members and the Co-Op Board of Directors. Rebecca Hennessey also knew or should have known that the checks were not being paid through their personal bank accounts, and on information and belief was unjustly enriched by the fraud and had reason to know of the fraud.

25.     The fraud was not uncovered by Plaintiff until September of 2018.

26.     The Plaintiff's claim is timely because, at all times material hereto, there was and is at least one or more creditors who had neither actual knowledge nor discovery of facts constituting deemed notice of the nature of Jerry Hennessey's fraud, within the six years before the first date on which Jerry Hennessey's fraud was discovered.

## COUNT I -- ACTUAL FRAUD
### Minn. Stat. §§ 513.44(a)(1) and 513.47

27.    The Plaintiff realleges the foregoing paragraphs of this Complaint.

28.    Jerry Hennessey did not have a right to use the Co-Op's funds to pay for exotic hunting trips.

29.    Jerry Hennessey's use of the Unauthorized Checks to pay for exotic hunting trips was part of his fraudulent scheme to divert the Co-Op's funds for his personal benefit and for the benefit of his wife Rebecca Hennessey and  for the benefit of Defendants.

30.    The transfers represented by the Unauthorized Checks were made with the actual intent to hinder, delay or defraud the Co-Op's creditors by utilizing funds that could have been used to satisfy creditors and, instead, using them for Jerry Hennessey's own personal benefit and for the benefit of his wife, Rebecca Hennessey.

31.    The transfers represented by the Unauthorized Checks were made to Defendants in furtherance of Jerry Hennessey's fraudulent scheme.

32.    To the extent that Defendants are not initial transferees of the transfers represented by the Unauthorized Checks, they are subsequent transferees of the initial transferees of the transfers, and upon information and belief cannot satisfy their burden that they took the transfers for value and in good faith  or are entities or individuals for whose benefit such transfers were made.

33.    As a result of the foregoing, the Plaintiff is entitled to judgment pursuant to Minn. Stat. §§ 513.44(a)(1) and 513.47 avoiding the transfer of $312,150.00 pursuant to the Unauthorized Checks and authorizing the Plaintiff to recover such funds along with prejudgment and post-judgment interest, fees and costs from Defendants.

## COUNT II -- CONSTRUCTIVE FRAUD
### Minn. Stat. §§ 513.45(a) and 513.47

34.    The Plaintiff realleges the foregoing paragraphs of this Complaint.

35.    The Co-Op received less than reasonably equivalent value for the transfers represented by the Unauthorized Checks.

36.    Even though the Co-Op owed no money and had no contractual relationship with the Defendants, the Defendants accepted the Unauthorized Checks and procured the Co-Op's funds through use of the Unauthorized Checks.

37.    At the time the Defendant procured funds from the Co-Op by utilizing the Unauthorized Checks, the Co-Op was insolvent or became insolvent as a result of the transfers.

38.    The Defendants are the initial transferees of the transfers represented by the Unauthorized Checks.

39.    To the extent that the Defendants are not initial transferees of the transfers represented by the Unauthorized Checks, they are subsequent transferees of the initial transferees of the transfers, and upon information and belief cannot satisfy their burden that they took the transfers for value and in good faith  or are entities or individuals for whose benefit such transfers were made.

40.    As a result of the foregoing, the Plaintiff is entitled to judgment pursuant to Minn. Stat. §§ 513.45(a) and 513.47 avoiding the transfer of $312,150.00  pursuant to the Unauthorized Checks and authorizing the Plaintiff to recover such funds along with prejudgment and post-judgment interest, fees and costs from Defendants.

## COUNT III--UNJUST ENRICHMENT

41.     The Plaintiff realleges the foregoing paragraphs of this Complaint.

42.     An unjust enrichment claim requires a showing that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay. *ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 306 (Minn.1996).

43.     Here, Defendants knowingly received $312,150.00 from the Co-Op.

44.     The Defendants knew or should have known that they were benefiting from fraudulent activity or, at a minimum, failed to exercise reasonable due diligence in accepting the Unauthorized Checks.

45.     The Unauthorized Checks clearly identified the Co-Op as the payor.

46.     Even though the Co-Op owed no money and had no contractual relationship with the Defendants, the Defendants accepted the Unauthorized Checks and procured the Co-Op's funds through use of the Unauthorized Checks.

47.     The Defendants are the initial transferees of the transfers represented by the Unauthorized Checks and/or all benefited from the funds.

48.     The Co-Op first learned of the first of the Unauthorized checks on or about September 12, 2018 and has acted with diligence in bringing this claim.

49.     As a result of the foregoing, the Plaintiff is entitled to judgment in the amount of $312,150.00 along with prejudgment and post-judgment interest, fees and costs from Defendants.

8

WHEREFORE, the Plaintiff respectfully requests a judgment of this Court:

a. Awarding the Plaintiff, a money judgment against Defendants in the amount of $312,150.00;

b. Awarding the Plaintiff's costs, disbursements and attorneys' fees as allowed by law; and,

c. For such other relief as the Court deems just and equitable.

**Ahlgren Law Office, PLLC**

Dated: January 8, 2019

/s/Erik A. Ahlgren
Erik A. Ahlgren, Attorney #191814
220 West Washington Ave, Ste 105
Fergus Falls, MN 56537
Office: 218-998-2775
Fax: 218-998-6404
*erik@ahlgrenlaw.net*

ATTORNEYS FOR PLAINTIFF

**CLINE JENSEN P.A.**

Dated: January 8, 2019

Dorothy R. Bradley, Attorney # 0180518
125 South Mill Street
Fergus Falls, MN 56537
Office: 218-998-4088
Fax: 218-998-4087
*dbradley@clinelawyers.com*

ATTORNEYS FOR PLAINTIFF

9