## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Erik A. Ahlgren, in his capacity as assignee in the assignment for the benefit of creditors of Ashby Farmers Co-Operative Elevator Company,

        Plaintiff,

v.

Jay Link and Link's Wild Safaris,

        Defendants.

Civil No. 19-00305 (JRT/LIB)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## <u>INTRODUCTION</u>

Plaintiff Erik A. Ahlgren ("Plaintiff"), in his capacity as assignee in the assignment for the benefit of creditors of Ashby Farmers Co-Operative Elevator Company (the "Co-Op"), initiated multiple lawsuits in Minnesota against non-resident/foreign individuals and entities, three of which were removed to and are now pending in this District. In each lawsuit, Plaintiff alleges that a Co-Op employee misappropriated Co-Op funds and used them to, among other things, purchase hunting trips from the named defendants. With respect to the matters at issue in this lawsuit, Plaintiff fails to sufficiently plead a factual basis (1) for this Court to exercise personal jurisdiction over Defendants Jay Link and Link's Wild Safaris (collectively, "Defendants") or (2) to state cognizable claims against them.

First, Plaintiff fails to sufficiently allege that Defendants had any direct contacts with Minnesota. Defendants, in fact, do not have any contacts with Minnesota that would

support personal jurisdiction. Accordingly, this action must be dismissed, as its maintenance would offend traditional notions of fair play and justice.

Second, Plaintiff's three claims against Defendants fail to state a claim upon which relief can be granted. Plaintiff does not plead plausible factual allegations to support the actual and constructive fraudulent transfer claims in Counts One and Two of the Complaint. And, Plaintiff's unjust enrichment claim in Count Three is legally barred by the pursuit of the fraudulent transfer claims.

Because this Court lacks personal jurisdiction over Defendants and Plaintiff fails in any event to plead cognizable claims against them, this lawsuit should be dismissed.

## BACKGROUND ALLEGATIONS

### A. The Parties

#### 1. Plaintiff

The Co-Op is a Minnesota co-operative with its principal place of business located in Ashby, Minnesota. Compl. ¶ 1. The Co-Op purchases grain from local farmers, who are owners of the Co-Op, and ships it to grain markets to be sold. *Id*. ¶ 13. In December 2018, the Co-Op executed an assignment for the benefit of its creditors and filed the same in Grant County District Court, Minnesota. *Id*. ¶ 4. Pursuant to this assignment, the Co-Op assigned all its claims to Plaintiff who seeks to liquidate "all non-exempt assets of the Co-Op." *Id*. ¶ 5.

#### 2. Defendants

Defendant Jay Link ("Link") is an individual domiciled in Wisconsin. ECF No. 1 ¶ 21; Link Decl. ¶ 2. Link has little connection with Minnesota, having never (1)

maintained a Minnesota bank account, (2) been a Minnesota resident, or (3) owned a Minnesota business entity. Link Decl. ¶ 4.

Plaintiff also sued Defendant Link's Wild Safaris, an entity that does not exist and that Link does not operate. ECF No. 1 at 1 n.1; Link Decl. ¶ 3. Instead, Link is the founder and sole member of Link Wild Safaris, LLC, a Wisconsin limited liability company having its principal place of business in Minong, Wisconsin. Link Decl. ¶ 3. Link Wild Safaris, LLC has no Minnesota connection. *Id*. ¶ 5.

### B.    The Complaint's allegations

In 1989, the Co-Op hired Jerry Hennessey as its general manager. Compl. ¶ 14. Beginning in or around 2003, Hennessey began a scheme in which he misappropriated Co-Op funds by writing unauthorized checks to himself and others to pay personal bills, improve his home, purchase land, go on hunting trips, and obtain taxidermy services for animals he took on his hunts. *Id*. ¶ 15-16. To conceal this activity, Hennessey coded such checks as feed purchases, soybeans, wheat, corn, or other ordinary expenses of the Co-Op. *Id*.

From 2015 through 2018, Hennessey wrote multiple checks (the "Checks"), totaling $312,150, to pay for hunting trips "organized or sponsored by Defendants." *Id*. ¶ 17. Plaintiff alleges the checks identified the Co-Op as the payor and that Defendants knew or should have known that "they were benefitting from fraudulent activity" or "failed to exercise reasonable due diligence" by accepting the checks listed above. *Id*. ¶¶ 18, 22. The Co-Op discovered Mr. Hennessey's fraudulent activity in September 2018. *Id*. ¶ 25.

## C.    This Lawsuit

On February 8, 2019, Defendants timely removed this action from Grant County District Court to this Court based on diversity jurisdiction.  ECF No. 1.  On February 12, 2019, the parties stipulated to an extension of time until February 28, 2019 for Defendants to respond to the Complaint, which the Court granted.  ECF Nos. 4, 6.

The Complaint asserts two fraudulent transfer claims against Defendants.  Compl. ¶¶ 27-40.  Count One is for actual fraudulent transfer and Count Two is for constructive fraudulent transfer.  *Id.*  The Complaint also asserts an unjust enrichment claim in Count Three.  *Id.* ¶¶ 41-49.

## ARGUMENT

## I.    RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.    Governing standard

To establish personal jurisdiction over a non-resident defendant, this Court must determine whether exercising jurisdiction satisfies both the requirements of the state long-arm statute and federal due process.  *Digi–Tel Holdings, Inc. v. Proteq Telecomms., Ltd.,* 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)).  In Minnesota, however, the long-arm statute extends jurisdiction to the maximum limit consistent with due process, and the Court therefore may simply apply the federal standards.  *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires a defendant to have "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair

play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum must be such that the defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The defendant must "purposefully avail" itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Two different jurisdictional analyses—i.e., general and specific jurisdiction—are used to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). For general jurisdiction, a court must assess whether a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1281 (8th Cir. 1991). Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995). The Eighth Circuit applies a five-factor test to determine whether the exercise of personal jurisdiction passes constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the

interest of the forum state; and (5) the convenience of the parties. *See id.* "Significant weight is given to the first three factors." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 (8th Cir. 2004); s*ee also Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) ("The first three factors are primary factors, and the remaining two factors are secondary factors."); *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) ("the first three factors [are] of primary importance.").[1]

"When personal jurisdiction is challenged, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 591-92 (8th Cir. 2011)). To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff "must make a prima facie showing of personal jurisdiction over the challenging defendant." *Id.* The "plaintiff's prima facie showing 'must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion.'" *Id.* (quoting *K–V Pharm.,* 648 F.3d at 592). At all stages "the party seeking to establish the

---

[1]     As set forth below, the first three factors, which are "of primary importance," unequivocally demonstrate that the Court lacks personal jurisdiction over Defendants. Accordingly, extensive discussion regarding the last two factors, which are of "secondary" importance, is not warranted. In short, as to the fourth factor, Defendants do not dispute Minnesota has an interest in providing **its** citizens with a forum for dispute resolution. Here, however, Plaintiff is suing on behalf of the Co-Op creditors and Plaintiff has failed to plead the citizenship of any creditor. *See generally* Compl. Moreover, Minnesota's interest in providing a forum to its citizens is minimal when the dispute has minimal contacts to the state. *See Westley v. Mann*, 896 F. Supp. 2d 775, 792 (D. Minn. 2012). As to the fifth factor, Minnesota is an inconvenient forum for Defendants, who are not Minnesota citizens.

court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Id.*

B.      **Allegations regarding Defendants' Minnesota contacts**

The Complaint contains the following allegations regarding Defendants' purported Minnesota contacts: (1) Defendants solicited business from Minnesota residents by maintaining a website; (2) Defendants corresponded with Jerry and/or Rebecca Hennessey; and (3) Defendants accepted funds drawn from the Co-Op's bank account. Compl. ¶¶ 18, 20-21. As a matter of law, these purported contacts fail to support this Court's exercise of personal jurisdiction over Defendants.

C.      **The Complaint fails to allege sufficient facts to support the Court's exercise of personal jurisdiction over Defendants**

1.      **General jurisdiction is lacking**

Recent United States Supreme Court precedent has "clarified '[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home,' we explained, are the corporation's place of incorporation and its principal place of business." *Id.* (citing *Daimler*, 571 U.S. at 137; *Goodyear*, 564 U.S. at 924). The same analysis applies for a foreign individual. *Daimler*, 571 U.S. at 137 ("For an individual,

the paradigm forum for the exercise of general jurisdiction is the individual's domicile….").

Neither Defendant is "at home" in Minnesota. Link is not domiciled in Minnesota; he lives in Wisconsin. Link Decl. ¶ 2. And, while Link's Wild Safaris does not exist, Link Wild Safaris, LLC is neither incorporated in nor principally does business in Minnesota. *Id.* ¶¶ 3, 5. Thus, there is no basis for this Court to exercise general personal jurisdiction over either Defendant.

Nor is there any basis for Plaintiff to assert that this is an "exceptional case" such that Defendants' alleged actions or operations in Minnesota "may be so substantial and of such a nature as to render the corporation at home in that State." *BNSF Ry. Co.*, 137 S. Ct. at 1558 (quoting *Daimler*, 571 U.S. at 139 n.19). Indeed, among other things, Defendants are not licensed to do business in Minnesota, have no agents in Minnesota, and do not maintain any Minnesota bank accounts. Link Decl. ¶¶ 3-5. Simply stated, Defendants have no "continuous and systematic" ties to Minnesota and there is "no basis for [the] assertion of [general] personal jurisdiction. . . ." *Zhorne v. Swan*, 700 F. Supp. 1037, 1039 (D. Minn. 1988). This Court does not have general jurisdiction over Defendants.

### 2. Specific jurisdiction is lacking

This Court does not have specific jurisdiction over Defendants, either. They have not "purposefully directed" any activities at residents of Minnesota, and no injuries alleged in this action "arise out of or relate to" any activity on the part of Defendants that was directed at Minnesota. *See Wessels*, 65 F.3d at 1432. As such, the first three factors

regarding the nature, quality, quantity, and connection of the contacts with Minnesota do not provide a constitutional basis to exercise specific jurisdiction.

As discussed above, Defendants do not have any general contacts with the forum state to support personal jurisdiction. Link Decl. ¶¶ 2-9. With regard to the underlying alleged conduct, Defendants' only supposed "contacts" with Minnesota are that they (1) maintained a website, (2) corresponded with Jerry and/or Rebecca Hennessey, and (3) accepted Co-Op checks drawn from the Co-Op's bank account. Compl. ¶¶ 18, 20-21. As discussed below, such contacts are insufficient as a matter of law to justify this Court's exercise of personal jurisdiction over Defendants.

First, although Link Wild Safaris, LLC maintains a website,[2] it does not specifically target Minnesota residents. *See* Link's Wild Safaris, http://linkswildsafaris.com/, (last visited Feb. 27, 2019).[3] In fact, while the website offers potential hunting or fishing destinations throughout the world, not a single hunting or fishing destination is offered in Minnesota. In addition, the website is not interactive and does not allow users to purchase Defendants' services through the website; the only interaction consumers could have through the website is that they may click on a link to email Defendants. *See id*. "Merely maintaining a commercial website that does not specifically target residents of a forum state . . . is insufficient to confer personal

---

[2] Link Wild Safaris, LLC operates a website named Link's Wild Safaris.

[3] When conducting a dismissal analysis, a court may consider pleadings, matters of public record, and materials embraced by and exhibits attached to the pleadings. *See, e.g.*, *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

jurisdiction." *ProMove, Inc. v. Siepman*, No. 18-CV-1196 WMW/KMM, 2019 WL 257511, at *4 (D. Minn. Jan. 18, 2019) (citing *Bible & Gospel Tr. v. Wyman*, 354 F. Supp. 2d 1025, 1031 (D. Minn. 2005)); *see also Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co.*, 872 F. Supp. 2d 838, 849 (D. Minn. 2012) (stating a passive website through which consumers cannot make orders and can only click on a link to contact the business is insufficient to be considered as a contact for personal jurisdiction); *Minnesota Pub. Radio v. Virginia Beach Educ. Broad. Found.*, 519 F. Supp. 2d 970, 976–77 (D. Minn. 2007) (quotation omitted) (stating that if a website that did not allow users to purchase goods was sufficient to establish minimum contacts "then due process would impose little restraint over every e-commerce entrepreneur who offers goods or services for sale online"); *Vang v. Whitby Tool & Engineering Co. Ltd.*, 484 F. Supp. 2d 966, 971 (D. Minn. 2007) (stating a website is neutral and is not considered a "contact" for the purposes of personal jurisdiction when it only advertises products or services and provides contact information). Because the website identified in the Complaint is a passive website that does not specifically target Minnesota residents, it is an insufficient contact for purposes of establishing personal jurisdiction.

Second, Plaintiff alleges that Defendants corresponded with Jerry and/or Rebecca Hennessey, presumably (although not explicitly pled) while they were in Minnesota. Compl. ¶ 21. But even "daily emails, phone calls, and other communications . . . to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could 'reasonably anticipate being haled into court there.'" *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) (quoting

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594–95 (8th Cir. 2011) (holding that emails and phone calls "do not constitute a 'deliberate' and 'substantial connection' with the state such that" the defendant would be subject to the court's personal jurisdiction)); *see also Burlington Indus.*, 97 F.3d at 1103 (holding that 100 telephone calls by the defendant to the plaintiff were "insufficient, alone, to confer personal jurisdiction").  Plaintiff's allegation that Defendants corresponded with Jerry and/or Rebecca Hennessey is insufficient to establish personal jurisdiction.

Third, Plaintiff's allegation that Defendants accepted checks drawn on the Co-Op's bank account is also insufficient to establish personal jurisdiction.  Compl. ¶ 21.  It is well established that

> invoices sent to the forum state, and payments for services
> made from the forum state, cannot themselves establish
> personal jurisdiction. If that were enough, then every contract
> for goods or services would trigger personal jurisdiction over
> the out-of-state party, and the Eighth Circuit has made clear
> that is not the law.

*Ready 4 A Change, LLC v. Sourcis, Inc.*, No. 18-CV-01341 ECT/ECW, 2019 WL 252028, at *5 (D. Minn. Jan. 17, 2019) (citing *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015)); *see also Eagle Tech.*, 783 F.3d at 1137 (holding that wire transfers from the forum state are insufficient to establish personal jurisdiction); *Viasystems, Inc.*, 646 F.3d at 594–95 (same).  Allegations of correspondence and acceptance of money from a forum state are "isolated connections [and] are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Viasystems, Inc.*, 646 F.3d at 594–95.  Because neither the quality nor the

quantity of Defendants' contacts with Minnesota could reasonably justify the exercise of personal jurisdiction over Defendants in Minnesota, this case must be dismissed for lack of personal jurisdiction.

## II.   RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Governing standard

"To survive a motion to dismiss, a claim must be <u>facially plausible</u>, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where we can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed." *Cole*, 599 F.3d at 861 (quoting *Iqbal*, 556 U.S. at 679). The requirement that a plaintiff plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Applying that standard here, Plaintiff's Complaint should be dismissed because it lacks sufficient facts to provide the grounds for Plaintiff's requested relief.

## B.    Plaintiff's fraudulent transfer claims fail

In Counts One and Two, Plaintiff pleads actual and constructive fraudulent transfer claims under the Minnesota Uniform Voidable Transactions Act ("MUVTA").[4] Minn. Stat. §§ 513.44(a), 513.45; Compl. ¶¶ 27-40.  In support of these claims, however, Plaintiff alleges nothing more than legal conclusions and a recitation of statutory elements.  As such, Plaintiff's fraudulent transfer claims fail.

### 1.    Plaintiff's actual fraudulent transfer claim fails

With respect to an actual fraudulent transfer claim, Minn. Stat. § 513.44(a)(1) provides:

> (a)    A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (1)    with actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

In other words, Plaintiff must allege plausible facts demonstrating that the Co-Op made payments to Defendants in 2015-2018 "with actual intent to hinder, delay, or default any creditor" of the Co-Op.

Because Plaintiff is required to establish fraudulent intent, its pleading allegations must satisfy Rule 9(b)'s particularity requirements. *See S.E.C. v. Brown*, 643 F. Supp. 2d 1077, 1080 (D. Minn. 2009) ("It is undisputed that claims under MUFTA [MUVTA] must comport with Rule 9(b)'s particularity requirements."). To satisfy this heightened

---

[4]    Prior to August 2015, MUVTA was named the Minnesota Uniform Fraudulent Transfer Act. 2015 Minn. Sess. Law Serv., ch. 17 (West) (to be codified at Minn. Stat. §§ 513.41-.51).

pleading requirement, the "who, what, where, when, and how" of the alleged fraud must be pled. *See United States ex. rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

Intent to defraud is rarely established by direct allegations. *See In re Sherman*, 67 F.3d 1348, 1353 (8th Cir. 1995). But courts may infer fraudulent intent from "badges of fraud," which are "certain suspicious circumstances that frequently accompan[y] fraudulent transfer[s]." *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 59 (Minn. 2014). Here, Plaintiff fails to state a cognizable claim of actual fraudulent transfer for two reasons.

a. <u>REASON NO. 1: No plausible allegations of "actual intent to hinder, delay, or defraud"</u>

Plaintiff summarily alleges that the "transfers represented by the Unauthorized Checks were made with actual intent to hinder, delay or defraud the Co-Ops creditors by utilizing funds that could have been used to satisfy creditors and, instead, using them for Jerry Hennessey's own personal benefit and for the benefit of his wife, Rebecca Hennessey." Compl. ¶ 30. Such conclusory allegations do not suffice to state a claim for fraudulent intent. *Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 225–26 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678 ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation.'")); *see also Kranz v. Koenig*, 240 F.R.D. 453, 456 (D. Minn. 2007).

b.      <u>REASON NO. 2: Insufficient plausible allegations regarding "badges of fraud"</u>

As set forth above, because actual intent to hinder, delay, or defraud courts may be difficult to prove, "courts may consider eleven 'badges of fraud'" set forth in Minn. Stat. § 513.44.  *Cedar Rapids Lodge & Suites, LLC v. Seibert*, No. 14-CV-04839 SRN/KMM, 2018 WL 747408, at *12 (D. Minn. Feb. 7, 2018) (citing *Finn v. Alliance Bank*, 860 N.W.2d 638, 645 (Minn. 2015)).  The eleven statutorily-recognized badges of fraud for MUVTA claims are as follows:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn. Stat. § 513.44(b).

Pleading one "badge" alone is insufficient; there must be a "concurrence of several" badges of fraud to demonstrate "actual intent" to defraud. *See Lorenz Bus Service, Inc. v. Richfield Bus Co.*, No. C2-02-56, 2002 WL 2005468, at *6 (Minn. App. Sept. 3, 2002); *see also In re Sherman*, 67 F.3d at 1354; *Kelly v. Armstrong*, 206 F.3d 794, 798 (8th Cir. 2000).

Plaintiff fails to plead in the Complaint sufficient plausible facts concerning a large majority of the badges of fraud:

- **Badge No. 1:** There are no allegations that Defendants are "insiders."

- **Badge No. 2:** There are no allegations that the Co-Op retained possession of the funds allegedly transferred to Defendants.

- **Badge No. 4:** There are no allegations that the Co-Op had been sued or threatened with suit prior to the issuance of the Checks.

- **Badge No. 5:** There are no allegations that the Checks, totaling $312,150.00, were "substantially all" of the Co-Op's assets.

- **Badge No. 6:** There are no allegations that the Co-Op absconded.

- **Badge No. 8:** Plaintiff's conclusory allegation that "upon information and belief [Defendants] cannot satisfy their burden that they took the transfers for value and in good faith" (Compl. ¶ 32) is insufficient.[5]

- **Badge No. 9:** Plaintiff's conclusory allegation that "[a]t the time the Defendant procured funds from the Co-Op by utilizing the Unauthorized Checks, the Co-Op was insolvent or became insolvent as a result of the transfers" (Compl. ¶ 37) is also insufficient to satisfy Plaintiff's pleading burden.

- **Badge Nos. 10-11:** There is no allegation that the Co-Op incurred a substantial debt immediately before or after the Checks. Nor is there any allegation that the Co-Op transferred essential business assets to a lienor who transferred them to an "insider."

Without plausible factual allegations regarding a sufficient number of the "badges of fraud" such that "actual" intent can fairly be inferred, Plaintiff fails to state an actual fraudulent transfer claim.

---

[5] As set forth above, conclusory allegations are not sufficient to state a claim for actual fraud. *Stoebner*, 909 F.3d at 225–26. Moreover, "[a]llegations pleading on information and belief usually do not meet Rule 9(b)'s particularity requirement" absent an accompanying "statement of facts on which the belief is founded." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 784-85 (8th Cir. 2009); *see also Cheng Lee v. Fed. Nat'l Mortg. Ass'n*, 553 F. App'x 652, 654 (8th Cir. 2014); *Richter v. Fed. Nat'l Mortg. Ass'n*, 553 F. App'x 655, 657 (8th Cir. 2014).

## 2. Plaintiff's constructive fraudulent transfer claim fails

In order to sufficiently plead a constructive fraudulent transfer claim under MUVTA, Plaintiff must prove plausible facts to support following:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Minn. Stat. § 513.45; *see also Finn*, 860 N.W.2d at 645 (emphasis added) ("a claim for constructive fraud turns on a creditor's ability to show that the debtor made the transfer 'without receiving reasonably equivalent value,' <u>and</u> the debtor was insolvent, or the transfer made the debtor insolvent or unable to pay its debts.").

Thus, Plaintiff must allege sufficient facts to make plausible each of the following:

- <u>Prong 1</u>: A Co-Op creditor's claim against the Co-Op "arose before" the Checks; and

- <u>Prong 2</u>: The Co-Op made the transfers "without receiving reasonably equivalent value in exchange for the transfer"; and

- <u>Prong 3</u>: The Co-Op was "insolvent" at the time of or "became insolvent as a result of the" Checks.

As set forth below, Plaintiff fails to satisfy the "plausibility" standard for any of these pleading requirements.

### a. <u>PRONG NO. 1 UNMET: No plausible allegations that a creditor's claim arose before the Checks</u>

Plaintiff's only allegation regarding the first prong is that "[a]t all times material hereto, there was and is at least one or more creditors who held and who hold claims

17

against the Co-Op, including but limited to CoBank (the 'Predicate Creditors')."  Compl.

¶ 9.  Conclusory allegations merely reciting statutory elements are insufficient to meet

Plaintiff's pleading burden.  *Twombly*, 550 U.S. at 555.

         b.     <u>PRONG NO. 2 UNMET: Insufficient allegations that the Co-Op did not receive reasonably equivalent value in exchange for the transfers</u>

Plaintiff summarily alleges that "[t]he Co-Op received less than reasonably

equivalent value for the transfers represented by the Unauthorized Checks."  Compl. ¶ 35.

No plausible facts to support this allegation are pled.  *Id.*  For the same reason discussed

immediately above, Plaintiff's conclusory allegation fails to plausibly plead facts to

satisfy this prong.

         c.     <u>PRONG NO. 3 UNMET: Insufficient allegations that the Co-Op was "insolvent" at the time of or "became insolvent as a result of the" Checks</u>

Plaintiff alleges that "[a]t the time the Defendant procured funds from the Co-Op

by utilizing the Unauthorized Checks, the Co-Op was insolvent or became insolvent as a

result of the transfers."  *Id.* ¶ 37.  Again, no plausible facts supporting this allegation are

pled.  As such, the conclusory allegations do not satisfy Plaintiff's pleading burden,

meaning Plaintiff fails to state a claim for constructive fraudulent transfer.

    **C.**     **<u>Plaintiff fails to state a claim for unjust enrichment</u>**

 "Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a

benefit conferred upon a defendant when retention of the benefit is not legally

justifiable."  *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn.

2012).  A plaintiff cannot assert a claim for unjust enrichment '"when there is an

adequate remedy at law.'" *Bartholomew v. Avalon Capital Grp., Inc.*, 828 F. Supp. 2d 1019, 1030 (D. Minn. 2009) (quoting *Southtown Plumbing, Inc. v. Har–Ned Lumber Co.,* 493 N.W.2d 137, 140 (Minn. App. 1992)).   As such, a plaintiff "may not simultaneously maintain his claims for avoidance of transfers as fraudulent under statute [Chapter 513], and his claims for monetary recovery under the equitable theory of unjust enrichment, as to the same transfers and on the same pleaded facts." *In re Petters Co., Inc.*, 499 B.R. 342, 375 (Bankr. D. Minn. 2013).   When the plaintiff asserts fraudulent transfer claims, the plaintiff cannot even assert a claim for unjust enrichment as an "alternative remedy." *Finn v. Moyes*, No. 14-CV-1293 JRT/TNL, 2017 WL 1194192, at *17 (D. Minn. Mar. 30, 2017) (citing *Ventura v. Kyle*, 825 F.3d 876, 887 n.10 (8th Cir. 2016)).   And, even if the plaintiff does not prevail on his fraudulent transfer claims, the plaintiff "would still not be entitled to unjust enrichment damages because legal remedies are available to" the plaintiff.  *Moyes*, 2017 WL 1194192, at *17.

Here, Plaintiff's unjust enrichment claim is based on the "same pleaded facts" that supposedly support Plaintiff's fraudulent transfer claims.  *Compare* Compl. ¶¶ 41-49 *with id.* ¶¶ 27-40.   And, because adequate legal remedies are available to Plaintiff under the MUVTA, Plaintiff cannot allege a claim for unjust enrichment—even if Plaintiff's MUVTA claims are dismissed.  For this reason, Plaintiff's unjust enrichment claim must be dismissed as a matter of law.

## CONCLUSION

This Court lacks personal jurisdiction over Defendants. Defendants did not purposefully avail themselves of the privilege of conducting activities within Minnesota.

At best, Plaintiff alleges Defendants had isolated connections with Minnesota that are the type of random, fortuitous, and attenuated contacts that cannot justify personal jurisdiction. Because the maintenance of this action would not comport with due process, the Court should dismiss this lawsuit.

Setting aside the personal jurisdiction bar, Plaintiff also fails to state a claim upon which relief can be granted, as no plausible factual basis is alleged to support the three claims asserted against Defendants. Plaintiff's fraudulent transfer claims should be dismissed as Plaintiff fails to plead anything more than bare legal conclusions and a formulaic recitation of statutory elements. Moreover, because the MUVTA provides Plaintiff with an adequate legal remedy, Plaintiff is barred from asserting an unjust enrichment claim. For these reasons, Defendants' motion to dismiss should be granted, and this action should be dismissed.

Dated:  February 28, 2019

Respectfully submitted,

**BRIGGS AND MORGAN, P.A.**


By: _s/ Adam G. Chandler_

    Jason R. Asmus (#0319405)
    Adam G. Chandler (#397408)
    Mark G. Schroeder (#171530)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2157
Telephone:  (612) 977-8400
Fax:         (612) 977-8650
Email:      jasmus@briggs.com
           achandler@briggs.com
           mschroeder@briggs.com

**ATTORNEYS FOR DEFENDANTS**

11533286v1