UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Erik A. Ahlgren, in his capacity as assignee in the assignment for the benefit of creditors of Ashby Farmers Co-Operative Elevator Company,<br><br>          Plaintiff,<br><br>v.<br><br>Jay Link and Link's Wild Safaris,<br><br>          Defendants. | Civil No. 19-00305 (JRT/LIB)<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

Plaintiff fails to meet his prima facie burden to demonstrate that personal jurisdiction over Defendants exists in this Court. First, Plaintiff does not bother to try to establish general personal jurisdiction over Defendants—because he cannot do so as a matter of law. Simply put, Defendants are not "at home" in Minnesota. Second, Plaintiff cannot establish specific personal jurisdiction over Defendants, either. Plaintiff provides no new information regarding Defendants' contacts with Jerry Hennessey, instead relying on the same allegations regarding Defendants' website, correspondence with Mr. Hennessey, and checks written by Mr. Hennessey—all of which are legally insufficient to support the exercise of specific personal jurisdiction. And, the only new "evidence" Plaintiff raises does not support a finding of specific personal jurisdiction because it consists primarily of social media activity that has no connection with Plaintiff's claims,

does not pertain to contacts involving these Defendants, and does not consist of contacts with Minnesota.

Plaintiff also fails to state a claim upon which relief can be granted. Plaintiff's actual and constructive fraudulent transfer claims under MUVTA fail, because (1) the Complaint fails to plead sufficient facts supporting an actual fraud claim and (2) Plaintiff fails to allege any facts supporting a constructive fraud claim under the heightened pleading standard of Rule 9(b). Plaintiff's opposition relies in part upon matters outside of the Complaint (a purported plea agreement), which should not be considered by the Court on a Rule 12 motion, and does not support the disputed inferences Plaintiff attempts to draw from it. Otherwise, the Complaint makes conclusory allegations, which are insufficient to support fraudulent transfer claims under the *Iqbal/Twombly* pleading standard. Plaintiff's unjust enrichment claim also fails as a matter of law because Plaintiff has an adequate legal remedy via his already-pled MUVTA claims.

Because this Court lacks personal jurisdiction over Defendants and Plaintiff's Complaint fails to state a claim upon which relief can be granted, this Court should grant Defendants' motion and dismiss this action.

## **ARGUMENT**

### I.   **DEFENDANTS' RULE 12(B)(2) MOTION TO DISMISS SHOULD BE GRANTED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS**

Plaintiff does not contest that it is his burden to affirmatively demonstrate that personal jurisdiction exists over both Defendants. *See* Defs. Mem. at 4–7. Notwithstanding his uncontested burden of proof, Plaintiff has failed at both of his

opportunities—*i.e.,* the Complaint and his opposition memorandum to Defendants' motion—to make a prima facie showing that the Court has either general or specific personal jurisdiction over Defendants.

### A. General personal jurisdiction does not exist

As it is unaddressed by Plaintiff in his opposition, it bears repeating that recent United States Supreme Court precedent has "clarified '[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home,' we explained, are the corporation's place of incorporation and its principal place of business." *Id*. (citing *Daimler*, 571 U.S. at 137; *Goodyear*, 564 U.S. at 924). The same analysis applies for a foreign individual. *Daimler*, 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile….").

Plaintiff does not even attempt to address the undisputed fact that Defendants are not "at home" in Minnesota; nor could he, as the Complaint expressly alleges that both Defendants are residents of Wisconsin. *See* Compl. ¶¶ 2–3. Unsurprisingly, then, Plaintiff's opposition makes no attempt to justify the exercise of general personal jurisdiction over Defendants. Instead, Plaintiff expressly admits his non-argument

regarding general personal jurisdiction. *See* Pl. Opp. Mem. at 7 ("general jurisdiction need not be addressed because the requirements of specific jurisdiction are clearly satisfied"). As confirmed by Plaintiff's waiver of any general-jurisdiction argument, neither Defendant is "at home" in Minnesota and, as such, there is no basis for this Court to exercise general personal jurisdiction over either Defendant.

### B. Specific personal jurisdiction also does not exist

Plaintiff fails to satisfy his burden of demonstrating that specific personal jurisdiction exists over Defendants because they "purposefully directed" their activities at residents of Minnesota <u>and</u> the injuries alleged in this action "arise out of or relate to" such activity. *See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995). While Plaintiff identifies a limited number of attenuated general contacts with the state (Pl. Opp. Mem. at 8–12), none of them are sufficient to establish specific personal jurisdiction as a matter of law.

#### 1. Plaintiff fails to establish that Defendants' contacts with the Hennesseys are sufficient to establish personal jurisdiction

To begin, Plaintiff does not contest the absence of minimum contacts between Defendants and Minnesota—namely, that Defendants (a) are not domiciled in Minnesota, (b) are not licensed to do business in Minnesota, (c) have no agents in Minnesota, and (d) do not maintain any bank accounts in Minnesota. *See* Link Decl. ¶¶ 2–5. Instead, the only connections to the underlying claims alleged by Plaintiff in this case are premised on conclusory allegations in the Complaint stemming from (1) Defendants' maintenance of a website, (2) Defendants' correspondence with Mr. and Mrs. Hennessey, and (3)

4

Defendants' cashing of checks payable by the Co-Op. *See* Pl. Opp. Mem. at 9, 12. Tellingly, however, Plaintiff fails to address the case law cited in Defendants' opening memorandum, which demonstrates that none of these contacts are sufficient to support this Court's exercise of personal jurisdiction over Defendants. *See* Def. Mem. at 9–12.

<u>Website</u>.  First, Link Wild Safaris, LLC's website does <u>not</u> specifically target Minnesota residents. *See* Link's Wild Safaris, http://linkswildsafaris.com/ (last visited Mar. 26, 2019). Plaintiff tellingly does not contest this fact and, accordingly, this type of website activity is legally insufficient to establish personal jurisdiction. *See* Def. Mem. at 9–10 (citing undisputed legal authority establishing that Defendants' website is not a contact for the purposes of personal jurisdiction).

<u>Correspondence</u>.  Second, although Plaintiff alleges that Defendants corresponded with Jerry and/or Rebecca Hennessey, Plaintiff offers only five invoices along with accompanying payment receipts that provide a PO Box for Jerry Hennessey. *See* Ahlgren Decl. Exhs. U–V. But, as set forth in Defendants' opening memorandum, this limited activity is also legally insufficient to support specific personal jurisdiction. *See* Def. Mem. at 10–11 (citing *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015); *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1103 (8th Cir. 1996)). And, even if Plaintiff had evidence of additional contacts of this sort by Defendants with the Hennesseys (which he does not), as a matter of law, "daily emails, phone calls, and other communications . . . to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could

5

reasonably anticipate being haled into court there." *Eagle Tech.*, 783 F.3d at 1137 (internal quotation marks omitted).

Cashed Checks. Third, Plaintiff's allegations that Defendants cashed checks drawn on the Co-Op's bank account (Compl. ¶ 21; Pl. Opp. Mem. at 12), are also insufficient to establish personal jurisdiction as a matter of law. *See* Def. Mem. at 11–12 (citing relevant legal authority establishing such contacts are insufficient to establish personal jurisdiction).

Simply put, the allegations in the Complaint are legally insufficient to support specific personal jurisdiction over these Defendants.

> **2. Plaintiff's additional "evidence" fails to establish that Defendants have sufficient contacts with Minnesota to establish specific personal jurisdiction**

The additional "evidence" of Defendants' purported contacts with Minnesota provided by Plaintiff (Pl. Opp. Mem. at 8–12) is insufficient to establish specific personal jurisdiction over Defendants, especially when this "evidence": (a) has no connection to Plaintiff's claims; (b) does not consist of contacts by these Defendants; or (c) does not constitute contacts with Minnesota.

First, Defendants are indisputably residents of Wisconsin. *See* Compl. ¶¶ 2–3. Plaintiff's attempt to use Defendant Link's residence in Wisconsin as a contact with this forum is absurd. *See* Pl. Opp. Mem. at 8, 12. Plaintiff does not cite any legal authority, nor could he, supporting the notion that a Wisconsin citizen who lives in Superior, Wisconsin, "only 7.4 miles from Duluth, Minnesota" (*id*. at 8), creates <u>any</u> contact

sufficient to confer personal jurisdiction over him by a Minnesota court.  Defendant Link's residence in Wisconsin is not a contact with Minnesota.

Second, Plaintiff's attempt to establish a contact with Minnesota through Defendant Link's former position as CEO of Jerky Snack Brands is also insufficient to create a contact with Minnesota.  *See* Pl. Opp. Mem. at 8, 12.  To be sure, the very exhibit Plaintiff cites to advance this argument recognizes that Jerky Snack Brands' principal place of business was in Wisconsin at the time Defendant Link was CEO, that certain company functions occurred out of the Wisconsin office, and does not establish that Defendant Link ever had any direct contact with the company's Mankato facility.  *See* Ahlgren Decl. Ex. D at 4.  More importantly, for purposes of this motion, the activities of this business enterprise have nothing to do with the purported claims at issue in this action.  *See generally* Compl.  Plaintiff does not suggest otherwise.

Third, Plaintiff argues that social media activity, again having no connection with Plaintiff's cause of action, is somehow sufficient to create a quality contact with Minnesota.  *See* Pl. Opp. Mem. at 10–12.  Tellingly, however, Plaintiff cites no legal authority supporting this contention.  *Id*.  The suggestion that an individual who "likes" a page connected to another state somehow subjects that individual to personal jurisdiction in that state flies in the face of reason.  Using that line of thinking, the majority of United States citizens would likely be subject to lawsuits in virtually any and every state in the country based on the pages he or she "likes."  Surely Plaintiff does not argue that Defendant Link is subject to personal jurisdiction in Mississippi because he "liked" Brett Favre's Facebook page or in Kentucky because he "liked" A&W Restaurant's Facebook

7

page. *See* Ahlgren Decl. Ex. F at 1. This Court should reject the notion that solicitous social media activity subjects a non-citizen to personal jurisdiction in other states.[1]

Fourth, Plaintiff relies on information that Defendant Link was the founder of an organization (SCI Lake Superior Chapter) that held fundraisers in Minnesota and that he was formerly a Vice President of the Safari Club International (SCI). *See* Pl. Opp. Mem. at 9–11. Again, Plaintiff cites no legal authority supporting its position that these facts are somehow sufficient to establish specific personal jurisdiction. *Id.* That is because they are not. At best, events held in Minnesota by a non-defendant, non-resident company (SCI) could be construed as indicative of purposeful availment of Minnesota's privileges and benefits by that company, not Defendants. Additionally, Link's role as former Vice President of a non-defendant, non-resident international organization (SCI) is not sufficient to establish specific personal jurisdiction.

Finally, Plaintiff stretches the facts when he represents that the "Lake of the Woods" fishing trip offered by Defendants has any connection to Minnesota. *See* Pl. Opp. Mem. at 11. Although part of Lake of the Woods is within Minnesota's boundaries, the "Lake of the Woods" fishing trip offered by Link Wild Safaris, LLC does **not**

---

[1] Similarly, indicating an intent to attend events or benefits unrelated to the underlying cause of action is not sufficient to demonstrate specific jurisdiction. *See, e.g.*, Ahlgren Decl. Exhs. J–L, ¶¶ 10, 11. Plaintiff relies heavily on this type of social media activity, even attempting to argue that Defendants had contact with Minnesota by providing a "discussion" from Defendant Link's Facebook page that occurred between Defendant Link (a Wisconsin resident) and another individual who claims to be from Iowa. *See id.* Ex. S, ¶ 19. This Facebook post does not show, as Plaintiff seems to imply, that Defendants use the internet to actively solicit business from other states, including Minnesota. As discussed below and in Defendants' opening memorandum, such internet activity is insufficient to establish personal jurisdiction in Minnesota. *See* Def. Mem. at 9–10. Defendants' social media activity is no different.

constitute a contact with Minnesota. Rather, this trip is advertised as being "TRULY CANADIAN" and taking place in Ontario, not Minnesota. Ontario Canada – Finest Fishing!, http://linkswildsafaris.com/newsite/wp-content/uploads/2018/05/Lake-of-the-Woods.pdf, last visited March 26, 2019. Also, this Canadian fishing trip has nothing to do with the claims at issue in this case. *See generally* Compl.

The additional "evidence" proffered by Plaintiff regarding Defendants' purported "contacts" with Minnesota are not extensive, quality contacts sufficient to establish specific personal jurisdiction. Nor do these purported "contacts" have anything to do with Plaintiff's claims in this action, and thus they have no bearing on whether this Court has specific personal jurisdiction over Defendants. For these reasons, this Court should disregard these contacts in their entirety.

### 3. Plaintiff's cited case law is inapposite

Plaintiff cites only limited legal authority to support his specific personal jurisdiction arguments, attempting to scatter the authority inconspicuously throughout his opposition memorandum for propositions unsupported by the original decisions. For example, Plaintiff cites the *Aftanase* case out of context to argue that Defendants engaged in activity sufficient to establish personal jurisdiction. *See* Pl. Opp. Mem. at 11–12. But *Aftanase* is inapposite. The defendant in that case was directly involved in selling metal balers and associated parts to purchasers in Minnesota for a number of years and on a number of occasions. *See Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965). Here, there is no evidence of affirmative contacts in Minnesota by Defendants over the course of years and in numerous different instances. Nothing in this case

9

suggests that Defendants "could have anticipated that [their] activity would have consequences in the state." *Id.*

Plaintiff also cites *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 982 (8th Cir. 2015) to suggest that the Court can disregard the first three of five factors considered by courts in analyzing personal jurisdiction if the last two factors (interests of the plaintiff and the forum) justify any undue burden placed on the defendants.  *See* Pl. Opp. Mem. at 13.  But Plaintiff misleadingly omitted in his memorandum the most important part of the court's quote: "[W]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Creative Calling*, 799 F.3d at 982 (emphasis added).  Plaintiff clearly omitted this first portion of the quote because he knows that minimum contacts have not been established here.  Accordingly, the first three factors—considered to be of primary importance by this circuit in analyzing personal jurisdiction—may not be disregarded in favor of the last two secondary factors.

### C. Jurisdictional discovery is not warranted

In a passing footnote, Plaintiff requests leave to conduct jurisdictional discovery in the event this Court does not deny Defendants' motion.  See Pl. Opp. Mem. at 14 n.2.  But Plaintiff offers no argument as to why he is entitled to jurisdictional discovery and identifies no additional facts he intends to seek through such discovery.  *Id*.  Rather, Plaintiff makes a broad request "to conduct jurisdictional discovery of Defendants." *Id*.  Because Plaintiff cannot provide this Court with more than mere "speculation or conclusory assertions" about Defendants' purported contacts with Minnesota, this Court

is well within its discretion to deny Plaintiff's request for jurisdictional discovery. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011) (holding that the district court was within its discretion to deny jurisdictional discovery based on speculative and conclusory assertions); *see also Lexion Med., LLC v. SurgiQuest, Inc.*, 8 F. Supp. 3d 1122, 1129–30 (D. Minn. 2014) (same); *Workman Sec. Corp. v. Phillip Roy Fin. Servs., LLC*, No. 09-CV-1723 (PJS/JSM), 2010 WL 155525, at *4–5 (D. Minn. Jan. 11, 2010) (denying the plaintiff's request for jurisdictional discovery because the defendant maintained a website that was only "passive in nature" and the request was "based on pure speculation"); *Greenbelt Res. Corp. v. Redwood Consultants, LLC*, 627 F. Supp. 2d 1018, 1027–28 (D. Minn. 2008) (finding that jurisdictional discovery was not appropriate because the request for jurisdictional discovery was "not specifically targeted to flesh out connections already shown to exist, but instead [was] more akin to a fishing expedition in which [the] plaintiff intends to cast a wide net for potential contacts with a forum state").[2]

Moreover, Plaintiff has effectively waived any right to request jurisdictional discovery by waiting until this late date to make such a request. Plaintiff commenced two other cases also pending in this district pursuing similar claims against other defendants. In both actions, Plaintiff worked with the defendants to stipulate to permitting limited

---

[2] The *Pudlowski* case cited by Plaintiff (Pl. Opp. Mem. at 14 n.2) is inapposite because the court was faced with a question of whether to consider a post-removal affidavit in support of *subject matter* jurisdiction based on diversity rather than *personal* jurisdiction. *See Pudlowski v. St. Louis Rams, LLC*, 829 F.3d 963, 964–65 (8th Cir. 2016).

jurisdictional discovery before further briefing on motions to dismiss. *See* Schroeder Aff. Exhs. 1–2, ¶ 3. Here, in contrast, only one day before filing its opposition memorandum (which includes Plaintiff's footnote request for jurisdictional discovery), Plaintiff explicitly stated that he "[did] not believe that additional discovery is required for Link." *Id*., Ex. 3. Plaintiff's belt-and-suspenders request for jurisdictional discovery should be rejected because (1) he has already had two opportunities to try to demonstrate a basis for specific personal jurisdiction in his Complaint and his opposition memorandum and supporting declaration and (2) he affirmatively chose to proceed with the motion to dismiss, rather than first engaging in jurisdictional discovery.

In sum, this Court should dismiss this action for lack of personal jurisdiction.

## II. DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS SHOULD BE GRANTED BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM

Contrary to Plaintiff's assertion (Pl. Opp. Mem. at 14), this is not an attempt to play a game of "Gotcha." Rather, under applicable federal pleading standards, Plaintiff has failed to plead sufficient facts to set forth a claim for relief under the MUVTA. The requirement that a plaintiff plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The Complaint does not allege more than mere legal conclusions in support of Plaintiff's fraudulent transfer claims, and Plaintiff's unjust enrichment claim fails because an adequate remedy exists and is being pursued. As a result, the Complaint must be dismissed for failure to state a claim.

### A.     Plaintiff's MUVTA claims should be dismissed

#### 1.     Plaintiff fails to state a plausible claim for actual fraudulent transfer

##### a.     Plaintiff fails to directly establish actual fraud

In response to Defendants' motion, Plaintiff relies entirely on matters contained outside the pleadings to support his argument that he sufficiently pled a claim for actual fraud based on direct evidence—namely, a purported plea agreement that had been, or would be, entered into by Jerry Hennessey. *See* Pl. Opp. Mem. at 16–18. But the Complaint contains no reference whatsoever to this purported plea agreement. *See generally* Compl. And, as described by Plaintiff, the purported plea agreement makes no direct reference to Defendants or to any specific transfers allegedly made to Defendants. *See* Ahlgren Decl. Ex. O.

Furthermore, Plaintiff attempts to offer this plea agreement to prove the truth of the matters asserted therein (Pl. Opp. Mem. at 16–18), and Defendants dispute the inferences that Plaintiff is attempting to establish through the introduction of this evidence. Because of the disputed nature of the inferences sought to be established by Plaintiff through this hearsay evidence, this Court should decline to take judicial notice of the plea agreement. *See Kushner v. Beverly Enter., Inc.*, 317 F.3d 820, 831–32 (8th Cir. 2003) (holding that "the district court did not abuse its discretion by declining to take judicial notice" of a plea agreement where the documents sought to be judicially noticed were "not SEC filings, [were] offered for the truth of the matters asserted in them, and

[defendant] dispute[d] the facts and inferences" that were attempted to be established by the documents).[3]

### b. Plaintiff fails to indirectly establish actual fraud through the statutory badges of fraud

Plaintiff also fails to allege with particularity certain badges of fraud to support its actual fraud claim. Of the eleven statutorily-recognized badges of fraud, Plaintiff only attempts to argue the existence of three of those badges—*i.e.*, Badges 3, 8 and 9. *See* Pl. Opp. Mem. at 18–20. Even if the Court were to accept Plaintiff's arguments regarding all three badges of fraud, which it should not, these badges of fraud still do not constitute the "concurrence of several" badges of fraud necessary to demonstrate "actual intent" to defraud. *See Lorenz Bus Ser., Inc. v. Richfield Bus Co.*, No. C2-02-56, 2002 WL 2005468, at *6 (Minn. Ct. App. Sept. 3, 2002). Nonetheless, Plaintiff's arguments regarding Badges 8 and 9 are unavailing as a matter of law.[4]

Badge 8. To support his argument regarding Badge 8 (reasonably equivalent value), Plaintiff asserts in conclusory fashion that there was no equivalent value received by the Co-Op. *See* Pl. Opp. Mem. at 18. These allegations are not sufficient to state a

---

[3] *See also Foster v. United States*, No. 5:08-CR-87-FL, 2018 WL 1902367, at *2 (E.D.N.C. Apr. 20, 2018) ("Because the facts for which petitioner requests that the court take judicial notice are subject to reasonable dispute, petitioner's motion to take judicial notice is denied."); *United States v. Schley-Cole*, No. 3:13-CR-11-2, 2013 WL 6073550, at *2 (N.D. W. Va. Nov. 18, 2013) ("courts are hesitant to judicially notice a court document for a party to use it for the purpose of the truth of its contents," citing cases).

[4] Because Defendants did not raise Plaintiff's failure to plead the existence of Badge 3 (purported transfers concealed from Plaintiff) in their opening memorandum (*see generally* Def. Mem.), Defendants herein will only address Plaintiff's arguments regarding Badges 8 and 9.

14

claim for actual fraud. *See Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 225–26 (8th Cir. 2018). Additionally, Plaintiff fails to address the statement in Defendant Link's declaration that payments made for the hunting trips coordinated by Defendants are provided to the outfitters, not retained for the benefit of Defendants. *Compare* Link Decl. at ¶ 3 ("All funds that Link Wild Safaris, LLC receives are paid to the local outfitters . . . .") *with* Compl. ¶ 32 (conclusory statement based only on information and belief that Defendants "cannot satisfy their burden that they . . . are entities or individuals for whose benefit [the alleged] transfers were made").

Badge 9. To support his argument regarding Badge 9 (insolvency), Plaintiff again relies primarily on his conclusory allegation that the Co-Op was insolvent (Pl. Opp. Mem. at 19–20), which is insufficient as a matter of law, as set forth in Defendants' opening memorandum. *See* Def. Mem. at 16. And while Plaintiff argues that the presumption of insolvency pursuant to Minn. Stat. § 513.42(b) establishes that his "factual contentions on insolvency" are sufficient (Pl. Opp. Mem. at 19), Plaintiff glosses over the fact that the Complaint does not plead any *facts* supporting his conclusory allegation. Moreover, the averments in Plaintiff's declaration do not establish that "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." *See* Minn. Stat. § 513.44(b). At best, Plaintiff's allegations establish that the debtor was insolvent at the time of the Assignment for the Benefit of Creditors, which was more than ten months *after* the last alleged transfer to Defendants.

In sum, Plaintiff fails to satisfy its burden to establish that a concurrence of badges of fraud exist to infer an <u>actual intent</u> to defraud.  Therefore, Count I of the Complaint should be dismissed for failure to state a claim.[5]

### 2. Plaintiff fails to plead a plausible constructive fraudulent transfer claim

Rule 9(b)'s heightened pleading standard undoubtedly applies to Plaintiff's constructive fraud claim, not Rule 8's general pleading standard.  The courts have broadly stated that "the heightened particularity requirements of Fed. R. Civ. P. 9(b) apply to fraudulent transfer claims under [MUVTA]." *Stoebner*, 909 F.3d at 226 n.6 (citations omitted).  Moreover, this Court, after recognizing an existing split in authority on the subject, explicitly held that "Rule 9(b) applies to fraudulent conveyance claims under [MUVTA].  Rule 9(b) states that the particularity requirement applies to <u>all</u> fraud claims, and [MUVTA] proscribes fraudulent conduct." *Kranz v. Koenig*, 240 F.R.D. 453, 455 (D. Minn. 2007).  Because Plaintiff's constructive fraud claim must be analyzed

---

[5]  Plaintiff's reliance on *S.E.C. v. Brown*, 642 F. Supp. 2d 1077 (D. Minn. 2009) is misplaced.  In *Brown*, the Court concluded that the receiver had sufficiently pled an actual fraudulent transfer claim by alleging actual intent to defraud the debtor's creditors (the "Brawta investors"), where the at-issue "payments 'came directly from the Brawta investors.'" 642 F. Supp. 2d at 1081.  But, the Court also noted that "merely alleging that Brown made payments to his mortgage lender is insufficient to state a claim," and then determined that a claim had been sufficiently pled for purposes of Rules 9(b) and 12(b)(6) because "the Receiver alleges that Brown made the mortgage payments by removing Brawta investors' funds in furtherance of a fraud on those investors." *Id.* at 1082.  In contrast, while Plaintiff here acknowledges that he is required "to plead that the transfer of funds to Defendants was made 'with actual intent to hinder, delay, or defraud' the Co-Op" (Pl. Opp. Mem. at 16), his Complaint fails to sufficiently allege with the particularity required by Rule 9(b) actual "intent to defraud the Coop's creditors." *See* Compl. ¶ 30 (containing conclusory allegations regarding intent to defraud which lack the requisite particularity).

16

under the heightened pleading standard of Rule 9(b), this Court need not analyze whether Plaintiff satisfied the more relaxed pleading standard under Rule 8, as argued by Plaintiff.

To satisfy his heightened pleading requirement, Plaintiff argues, without more, that he adequately pled a constructive fraud claim because it "did not receive any value from the transfer and was clearly insolvent." Pl. Opp. Mem. at 22. However, Plaintiff fails to acknowledge that he must plausibly plead all three elements identified in the governing statute. *See* Def. Mem. at 17 (quoting the conjunctive elements identified in Minn. Stat. § 513.45 and *Finn v. Alliance Bank*, 860 N.W.2d 638, 645 (Minn. 2015)). Plaintiff fails to establish the third required element of pleading a constructive fraud claim—namely, that a creditor's claim arose before the transfers to Defendants were made.

Plaintiff's footnote argument that a Co-Op creditor's claim against the Co-Op "arose before" the checks to Defendants (Pl. Opp. Mem. at 22 n.3) also fails to satisfy the heightened pleading requirement of Rule 9(b). The Complaint and the Assignment for the Benefit of Creditors, however, fail to provide the date on which *any* creditor's claim against the Co-Op arose.[6] For this reason, this allegation is insufficient as a matter of law to state a claim for constructive fraud. *See U. S. ex. rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (requiring a plaintiff to plead the "who, what, where, when, and how"). Accordingly, Count II of the Complaint should be dismissed.

---

[6] For the reasons stated above, this Court should decline to consider the plea agreement attached to Plaintiff's declaration. But, even if the Court does consider it for purposes of the constructive fraud claim, the plea agreement does not establish particular facts regarding what creditors had claims against the Co-Op and on what date those claims arose.

## C. **Plaintiff fails to state a claim for unjust enrichment**

Plaintiff's argument that his unjust enrichment claim should proceed despite having an adequate remedy at law is without merit. *See* Pl. Opp. Mem. at 22–23. Similar to Plaintiff's selective citation of cases relating to personal jurisdiction, Plaintiff's citation to the *Bame* case likewise misses the mark. In *United States v. Bame*, while the Court did recognize that other districts were unwilling to dismiss an unjust enrichment claim at the pleading stage, the court went on to say that "[d]istrict courts routinely dismiss unjust enrichment claims where the plaintiff pleaded and pursued both equitable and legal claims simultaneously...." 721 F.3d 1025, 1031 (8th Cir. 2013) (citations omitted).

Moreover, this Court recently recognized in granting a Rule 12(b)(6) motion to dismiss that, "[a]s a matter of law, [a plaintiff] may not pursue the equitable remedy of unjust enrichment due to the existence of an adequate legal remedy . . . ." *City Ctr. Realty Partners, LLC v. Macy's Retail Holdings, Inc.*, No. 17-CV-528 (SRN/TNL), 2017 WL 4081896, at *11 (D. Minn. Sept. 13, 2017); *see also Kelley v. Coll. of St. Benedict*, 901 F. Supp. 2d 1123, 1133 (D. Minn. 2012) ("[T]he availability of an adequate legal remedy precludes resort to unjust enrichment as a matter of law."). Plaintiff relies on three cases for his argument that his unjust enrichment claim should proceed, but none of the cases held that an unjust enrichment claim should proceed where the plaintiff had MUVTA claims. *See* Pl. Mem. at 23 and the cases cited therein. Plaintiff has failed to explain why his legal remedy is inadequate.

Because Plaintiff may not, as a matter of law, plead his unjust enrichment claim when he has an adequate legal remedy under the MUVTA, Plaintiff's Complaint fails to state a claim for unjust enrichment, and Count III should be dismissed.

## **CONCLUSION**

This Court lacks personal jurisdiction over Defendants.  Plaintiff does not (nor could he) even argue general personal jurisdiction.  Plaintiff wholly fails to meet its prima facie burden to establish specific personal jurisdiction because he fails to provide any new, relevant facts or evidence to support specific personal jurisdiction.

Plaintiff also fails to state a claim upon which relief can be granted.  Plaintiff's actual and constructive fraudulent transfer claims under the MUVTA are deficiently pled on their face because they are premised on bare legal conclusions that do not pass *Twombly*/*Iqbal* muster.  Plaintiff's back-up claim for unjust enrichment is also legally deficient because Plaintiff's already-asserted MUVTA claims provide an adequate legal remedy.

For these reasons, Defendants' motion to dismiss should be granted, and this action should be dismissed.

Dated: April 2, 2019

Respectfully submitted,

**BRIGGS AND MORGAN, P.A.**

By: *s/ Mark G. Schroeder*
    Jason R. Asmus (#0319405)
    Adam G. Chandler (#397408)
    Mark G. Schroeder (#171530)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2157
Telephone: (612) 977-8400
Fax: (612) 977-8650
Email: jasmus@briggs.com
          achandler@briggs.com
          mschroeder@briggs.com

**ATTORNEYS FOR DEFENDANTS**

11615281