UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ERIK A. AHLGREN, in his capacity as assignee in the assignment for the benefit of creditors of Ashby Farmers Co-Operative Elevator Company,<br><br>Plaintiff,<br><br>v.<br><br>JAY LINK and LINK'S WILD SAFARIS,<br><br>Defendants. | Civ. No. 19-305 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER** |

Erik A. Ahlgren, **AHLGREN LAW OFFICE, PLLC,** 220 West Washington Avenue, Suite 105, Fergus Falls, MN  56537, for plaintiff.

Mark G. Schroeder, Adam G. Chandler, and Jason R. Asmus, **BRIGGS & MORGAN, PA,** 80 South Eighth Street, Suite 2200, Minneapolis, MN, 55402, for defendants.

Between 2003 and 2018, the manager of the Ashby Farmers Co-Operative Elevator Company (the "Co-Op"), Jerry Hennessey, appropriated millions of dollars of the Co-Op's funds for his personal use.  He accomplished this in part by writing unauthorized checks to third parties, including Defendants Jay Link and Link's Wild Safaris.  Upon discovery of the fraud in 2018, the Co-Op ceased operations and appointed an Assignee, Plaintiff Erik Ahlgren, to pursue claims and remedies on its behalf and on behalf of its creditors.  Ahlgren brought this action in January 2019, seeking to void the unauthorized payments to Defendants.  Ahlgren alleges three Counts: (I) Actual Fraud pursuant to Minn. Stat. §§

1

513.44(a)(1), 513.47; (II) Constructive Fraud pursuant to Minn. Stat. §§ 513.45(a), 513.47; and (III) Unjust Enrichment.

Before the Court now is Defendants' Motion to Dismiss for lack of personal jurisdiction and failure to state a claim. Because Link and LWS solicited business in Minnesota and this dispute arises out of that solicitation, the Court will deny the Motion to Dismiss to the extent it is based on lack of personal jurisdiction. Because Ahlgren pled facts sufficient to show fraud and constructive fraud, the Court will deny the Motion to Dismiss to the extent it is based on failure to state a claim on Counts I and II. Finally, because adequate legal remedies exist, the Court will grant Defendants' Motion as to Count III and dismiss Count III with prejudice.

## BACKGROUND

The Co-Op is a grain farmers' cooperative based in Ashby, Minnesota. (Notice of Removal ¶ 1, Ex. A ("Compl.") ¶¶ 1, 12-13, Feb. 8, 2019, Docket No. 1-1.) The Co-Op purchases grain from local farmers, who are also owners of the Co-Op, and sells it to grain markets. (*Id.* ¶ 13.)

In 1989, the Co-Op hired Jerry Hennessey, a resident of Minnesota, as its general manager. (Compl. ¶ 14.) Between June 2003 and September 2018, Hennessey received over $5.4 million in unauthorized funds from the Co-Op by writing checks from the Co-Op to himself and third parties, including Jay Link. (*Id.* ¶¶ 15-17, 25.) Hennessey used the checks for personal bills, home improvement projects, property purchases, and

domestic and international hunting trips. (*Id.* ¶ 16.) Hennessey disguised the checks by coding them as feed purchases or other ordinary expenses. (*Id.* ¶ 16.)

Jay Link is a resident of Wisconsin. (*Id.* ¶ 2.) He owns and operates Link Wild Safaris ("LWS") out of Minong, Wisconsin. (*Id.* ¶ 3; Decl. of Jay Link ("Link Decl.") ¶ 3, Feb. 28, 2019, Docket No. 12.) LWS connects hunters and fishers with international outfitters, who provide guide services and accommodations to LWS's clients. (Link Decl. ¶ 3.) LWS is not licensed to do business in Minnesota and does not have property or agents in Minnesota. (*Id.* ¶ 5.) However, LWS does attend exhibitions in Minnesota hosted by the Safari Club International ("SCI"). (Aff. of Erik A. Ahlgren ("Ahlgren Aff.") ¶ 7 & Ex. G, Mar. 19, 2019, Docket No. 17.) LWS attended Minnesota SCI expos as an exhibitor in 2017, 2018, and 2019, and links to LWS's website appear on SCI Minnesota's webpages where it lists its exhibitors for those years. (*Id.*) LWS also donated hunting trips at Minnesota SCI events in 2017 and 2019. (*Id.* ¶¶ 8-9 & Ex. H-I.) Link is also involved with SCI in a personal capacity, including as the founder of the SCI Lake Superior Chapter, which holds events in Minnesota. (*Id.* ¶ 10 & Ex. J.)

Link states that he and Hennessey first met in February 2015 at the SCI Convention in Nevada, which Link attended as a representative for LWS. (Link Decl. ¶ 6.) In October of that year, Hennessey wrote an unauthorized check to Link using the Co-Op's funds. (Compl. ¶ 17.) Between October 2015 and February 18, 2018, Hennessey wrote ten unauthorized checks to Link, totaling $312,150.00. The checks, which identified the Co-Op as the payor, paid for Hennessey to go on exotic hunting trips organized by LWS. (*Id.* ¶ 17.) Hennessey also paid LWS to organize a hunting trip with an outfitter based in

3

Centerville, Minnesota.  (Ahlgren Aff. ¶ 22 & Ex. V.)  While providing services to Hennessey and his wife, Link and LWS corresponded with the couple to obtain permits for and receive travel information from them.  (Compl. ¶ 21.)  LWS addressed invoices during this time to Hennessey's P.O. Box in Ashby, Minnesota.  (Ahlgren Aff. ¶ 21, Exs. U-V at 134-49.)

The fraud was discovered in September 2018.  (Compl. ¶ 25.)  Hennessey pleaded guilty to mail fraud and income tax evasion on February 14, 2019.  (Ahlgren Aff. ¶ 14, Ex. O at 83-95.)  By the time the fraud was discovered, Hennessey had obtained over $7 million in a credit line for the Co-Op in his ongoing efforts to conceal his fraud and cover up the Co-Op's expenses.  (*Id.* at 84-85.)  As a result of Hennessey's fraud, the Co-Op was forced to close and has been unable to pay its debts.  (Compl. ¶ 13; Ahlgren Aff. ¶ 18, Ex. R at 112.)  The Co-Op has forty-three creditors, most of which are based in Minnesota.  (Ahlgren Aff. ¶ 18, Ex. R at 119.)

In December 2018, the Co-Op executed an assignment (the "Assignment") with Erik Ahlgren for the benefit of the Co-Op's creditors.  (Compl. ¶ 4; Ahlgren Aff. ¶ 18, Ex. R at 112-114.)  Pursuant to Minn. Stat. §§ 576-77, Ahlgren has committed to liquidating and administering the Co-Op's assets and may pursue any claim or remedy that could be asserted by the Co-Op or by a creditor of the Co-Op.  (Compl. ¶¶ 5, 7.)

Ahlgren brought this action in Grant County District Court on January 8, 2019, alleging three Counts:  (I) Actual Fraud pursuant to Minn. Stat. §§ 513.44(a)(1), 513.47; (II) Constructive Fraud pursuant to Minn. Stat. §§ 513.45(a), 513.47; and (III) Unjust Enrichment.  (Compl. ¶¶ 27-49.)  Ahlgren seeks recovery of the unauthorized funds paid

by Hennessey to Defendants. (Compl. ¶¶ 33, 40, 49.) Defendants removed the case to this Court on February 7, 2019. (Notice of Filing of Notice of Removal, Feb. 8, 2019, Docket No. 1-2.) On February 28, 2019, Defendants moved to dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6). (Mot. to Dismiss, Feb. 28, 2019, Docket No. 9.)

## DISCUSSION

### I.   PERSONAL JURISDICTION

#### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003). "As long as there is 'some evidence upon which a prima facie showing of jurisdiction may be found to exist,' the Rule 12(b)(2) motion will be denied." *Pope v. Elabo GmbH,* 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)). The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction." *Epps,* 327 F.3d at 647. For purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the non-moving party. *Westley v. Mann,* 896 F. Supp. 2d 775, 786 (D. Minn. 2012).

#### B.   Analysis

The Court may exercise personal jurisdiction over a defendant if doing so (1) is consistent with the Minnesota state long-arm statute, Minn. Stat. § 543.19, and (2) comports with Due Process.  *Pope,* 588 F. Supp. 2d at 1014.  Because Minnesota Statute § 543.19 reaches only as far as constitutional Due Process allows, the Court need only consider whether exercising personal jurisdiction over Link and LWS in this case is consistent with due process.  *Id.* at 1015.

The exercise of personal jurisdiction over a defendant is consistent with due process if the defendant has made (1) minimum contact with the forum state such that (2) jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. at 310, 316 (1945).  These two requirements must be examined separately.  *Pope*, 588 F. Supp. 2d at 1015.  If the Court determines that the defendant does not have minimum contacts with the forum state, it need not turn to the question of reasonableness.  *Id.*

The Court must evaluate minimum contacts based on the defendant's conduct – namely whether the defendant "purposefully established 'minimum contacts' in the forum State."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe,* 326 U.S. at 316).  Sufficient minimum contacts exist only where a defendant "should reasonably anticipate being haled into court" in the forum state.  *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  A defendant may reasonably anticipate being haled into court when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

6

The Eighth Circuit considers five factors in making the two-part personal jurisdiction inquiry: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (citation omitted). "[T]he first two factors go primarily to whether minimum contacts exist," while the last two go to reasonableness. *Yellow Brick Road, LLC, v. Childs,* 36 F. Supp. 3d 855, 864 (D. Minn. 2014).

Personal jurisdiction may be general or specific. General jurisdiction is all-purpose and exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 924. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotations omitted). For purposes of specific jurisdiction, minimum contacts exist where the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal citations and quotations omitted). Once purposeful availment is established, "it is presumptively not unreasonable to require [a defendant] to submit to the burdens of litigation in" the forum. *Id.* at 476.

Neither Link nor LWS is subject to general jurisdiction in Minnesota. Link is domiciled in Wisconsin and operates LWS out of Wisconsin. While it appears their contacts with Minnesota are considerable, they are not so substantial as to render either Defendant "at home" in Minnesota. The Court must therefore decide whether specific jurisdiction exists—whether Link and LWS have "purposefully directed [their] activities at residents of [Minnesota]" and whether the present litigation "arise[s] out of or relate[s] to those activities." *Id.* at 472.

In doing so, the Court considers several of Defendants' contacts with the State, including: (1) LWS's solicitation of business in Minnesota, including its presence as a vendor at SCI events and, to a lesser extent, its online presence on SCI Minnesota's webpages; (2) Link's correspondence with Hennessey and his wife, made during his efforts to organize multiple hunting trips for the couple; and (3) Link's acceptance of $312,150.00 of payment in checks from the Co-Op. Defendants argue that their telephone and email correspondence with the Hennesseys is insufficient to confer personal jurisdiction. While it is true that phone calls and emails alone may be insufficient to confer personal jurisdiction, such contacts "remain a consideration in determining whether the defendant purposely availed himself of the privilege of doing business in Minnesota." *Wessels, Arnold, & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1433 (8th Cir. 1995). Moreover, the correspondence between Link, LWS, and the Hennesseys was not limited to phone and email; it also included the sending of invoices and acceptance of payment between the Hennesseys in Minnesota and Defendants in Wisconsin. When considered along with Link's trips to Minnesota to promote LWS, the Court finds that rather than

making "random or attenuated" contacts within Minnesota, Link and LWS purposefully directed their activities at residents of Minnesota with the intention of garnering business in Minnesota. *Burger King*, 471 U.S. at 475. The present dispute arose out of and relates to those efforts because it involves payment for Defendants' provision of services to the Hennesseys. As such, the Court finds that minimum contacts exist.

Finally, given Defendants' proximity and frequent visits to the State, litigating in Minnesota would not be unduly burdensome and would not violate notions of fair play and substantial justice. Defendants have not argued otherwise.

Accordingly, the Court finds that Link and LWS are subject to specific personal jurisdiction in this case and will deny their Motion to Dismiss to the extent it is based on lack of personal jurisdiction.

## II. FAILURE TO STATE A CLAIM

### A. Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotations omitted). The Court "construe[s] the complaint in the light most favorable to the plaintiffs, drawing all inferences in their favor." *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quotation omitted).

In reviewing a motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

**B.   Count I—Actual Fraud**

The Minnesota Uniform Voidable Transactions Act ("MUVTA") provides that "a transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor." Minn. Stat. § 513.44(a)(1).[1] This Court has previously held that claims under the MUVTA must satisfy Rule 9(b). *See S.E.C. v. Brown*, 643 F. Supp.

---

[1] "The [MUVTA] is to be interpreted broadly and is intended to apply to indirect transfers through a closely held corporation when the transfers are facilitated by a sole shareholder, officer, and director of the corporation." *Reilly v. Antonello*, 852 N.W.2d 694, 701 (Minn. Ct. App. 2014). Thus, while the Co-Op itself did not have fraudulent intent, Hennessey's alleged fraud as an officer of the Co-Op renders the MUVTA applicable.

2d 1077, 1080 (D. Minn. 2009) ("It is undisputed that claims under the [MUVTA] must comport with Rule 9(b)'s particularity requirements."). *See also Kranz v. Koenig*, 484 F. Supp. 2d 997, 1001 (D. Minn. 2007). Rule 9(b) requires that the plaintiff "identify the who, what, where, when, and how" of the alleged fraud. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (internal quotations omitted).

"Because the intent to defraud creditors is rarely susceptible of direct proof, courts continue to rely on badges of fraud to determine whether a transfer is fraudulent." *Citizens State Bank Norwood Young America v. Brown*, 849 N.W.2d 55, 60 (Minn. 2014) (internal quotations omitted). There are eleven statutorily recognized badges of fraud under the MUVTA. *See* Minn. Stat. § 513.44(b). While there is no precise number of badges that must be present to create a presumption of fraudulent intent, there must at least be a "confluence of the badges of fraud." *Kelly v. Armstrong*, 206 F.3d 794, 798 (8th Cir. 2000) (internal quotations omitted). At least three of them are present here, including: (1) that the transfers were concealed or disguised as ordinary purchases; (2) that the value of the consideration received by the Co-Op (nothing) was not reasonably equivalent to the amount of the obligation incurred; and (3) that the Co-Op became insolvent after the transfers were made. The Court finds that the confluence of these badges is sufficient to create a presumption of fraudulent intent.[2]

---

[2] Defendants maintain that the allegations fail because Ahlgren "fails to plead . . . sufficient plausible facts concerning a large majority of the badges of fraud." (Defs.' Mem. Supp. at 16, Feb. 28, 2019, Docket No. 11.) The Court has found no requirement that a plaintiff allege a majority of the badges of fraud to successfully state a claim under the MUVTA.

Even without considering the badges of fraud, however, the Court finds that Ahlgren has adequately pleaded the "who, what, where, when, and how" of the alleged fraud. The "who" includes Hennessey, Link, and LWS. The "what" includes $312,150.00 of the Co-Op's funds. The fraudulent payments were made between 2015 and 2018 in Minnesota. The "how" is also alleged—Hennessey wrote checks and coded them as purchases of ordinary business materials. In this case, fraudulent intent may also be established through Hennessey's Plea Agreement.[3]

Accordingly, the Court will deny Defendants' Motion to Dismiss with respect to Count I.

### C. Count II—Constructive Fraud

"To cover the variety of situations in which debtors may attempt to place assets beyond the reach of creditors, [MUVTA] allows creditors to recover assets that a debtor transfers with fraudulent intent . . . as well as those transfers that the law treats as constructively fraudulent, *see* Minn. Stat. §§ 513.44(a)(2), 513.45." *Finn v. Alliance Bank*, 860 N.W.2d 638, 644 (Minn. 2015). "[C]onstructive fraud[] does not require proof of fraudulent intent." *Id.* at 645. Instead, "a claim for constructive fraud turns on a creditor's ability to show that the debtor made the transfer 'without receiving reasonably equivalent

---

[3] Link and LWS ask the Court to refuse to consider the Plea Agreement because it is not explicitly mentioned in the Complaint and is hearsay. When considering a motion to dismiss pursuant to Rule 12(b)(6), courts "may consider some materials that are part of the public record or do not contradict the complaint." *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quotation omitted). Because the Plea Agreement is part of the public record and does not contradict the Complaint, the Court will consider it.

value,' and that the debtor was insolvent, or the transfer made the debtor insolvent or unable to pay its debts." *Id.* (quoting Minn. Stat. §§ 513.42, 513.44(a)(2), 513.45(a)).[4]

Link and LWS first argue that, because Ahlgren has not yet provided exact dates on which the creditors' claims against the Co-Op arose, he has not plausibly alleged that one or more creditors held claims against the Co-Op before the fraudulent checks were paid. That argument fails. A schedule filed with the Assignment on January 3, 2019, clearly identifies dozens of the Co-Op's creditors.[5] (Ahlgren Aff. ¶ 18, Ex. R at 119.) Considering the number of creditors and the large amounts owed to many of them, it is at least plausible that one or more of the creditors' claims arose before the final check was paid to Link in February 2018.

Defendants also argue that Ahlgren has failed to plausibly allege that the Co-Op made the transfers without receiving reasonably equivalent value. The Court disagrees. As discussed above, Ahlgren's allegations paint a detailed picture of the circumstances surrounding Hennessey's transfers to Link and LWS. Those allegations, taken as true, establish that Hennessey's payments to Link resulted in a transfer of the Co-Op's funds with no return of value to the Co-Op.

Finally, Defendants argue that Ahlgren has not plausibly alleged that the Co-Op became insolvent as a result of the transfers. To the contrary, Ahlgren has alleged that the

---

[4] The parties dispute whether Rule 9(b)'s particularity requirements apply to claims of constructive fraud under MUVTA. Because Ahlgren's claim satisfies heightened pleading standards, the Court need not decide that issue.

[5] The Court considers the Assignment and its attached schedules as they are in the public record and are necessarily embraced by the pleadings. *See Smithrud*, 746 F.3d at 395.

Co-Op shut down its operations within months after discovering the fraud and that the Co-Op is unable to pay its debts. The Assignment itself also supports the inference that the Co-Op became insolvent as a result of Hennessey's fraud.

Accordingly, the Court finds that Ahlgren has stated a claim for constructive fraud and will deny Defendants' motion to dismiss Count II.

### D. Count III—Unjust Enrichment

Link and LWS argue that Ahlgren's unjust enrichment claim is precluded because it relies on the same facts as the MUVTA claims. "[I]t is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law." *Bartholomew v. Avalon Capital Group, Inc.*, 828 F. Supp. 2d 1019, 1030 (D. Minn. 2009) (quoting *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992)). Accordingly, a plaintiff "may not simultaneously maintain his claims for avoidance of transfers as fraudulent under statute, and his claims for monetary recovery under the equitable theory of unjust enrichment, as to the same transfers and on the same pleaded facts." *In re Petters Co., Inc.*, 499 B.R. 342, 375 (Bankr. D. Minn. 2013).

Ahlgren does not dispute that the unjust enrichment claim relies on the same facts as the claims under MUVTA. Instead, he asks that the Court allow the claim to proceed as a claim in the alternative. "It is true that some district courts are unwilling to dismiss an unjust enrichment claim at the pleading stage despite the existence of an adequate legal remedy, because the federal rules allow for the pleading of claims in the alternative." *United States v. Bame*, 721 F.3d 1025, 1031 (8th Cir. 2013). But as the Eighth Circuit

emphasized in *Bame*, "it is the existence of an adequate legal remedy that precludes unjust enrichment recovery," and "[d]istrict courts routinely dismiss unjust enrichment claims where the plaintiff pleaded and pursued both equitable and legal claims simultaneously . . . ." *Id.* This Court thus finds that allowing the unjust enrichment claim to proceed would be contrary to settled law.

Accordingly, the Court will dismiss Count III with prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 9] is **GRANTED** in part and **DENIED** in part as follows:

1. The Motion is denied as to Counts I and II; and .

2. Count III is dismissed with prejudice.

DATED: August 6, 2019             _____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                                 Chief Judge
                                                    United States District Court